## E. W. KNEELAND *vs.* THOMAS BEARE.

**Liability of Landlord—Negligence.**

> Where portions of a tenement building are let to tenants, and the landlord retains the exclusive possession and control of other portions, he is bound to exercise common care and prudence in the management and oversight of the portion of the building retained; and, if damages are sustained by a tenant, by reason of his failure to do so, the landlord is liable therefor.

**Damages for Negligent Injury.**

> It is *held* in an action for damages by a tenant against his landlord, and upon a review of the entire case in this court, that the trial court properly found that the defendant was negligent in caring for the portion of the rented building which was under his control, and that the damages sustained by the plaintiff were properly assessed by the trial court.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Action by E. W. Kneeland against Thomas Beare. Judgment for plaintiff. Defendant appeals. Affirmed.

*Tracy R. Bangs,* for appellant.

The lease was in writing and contained no covenant of warrant of the condition of the building and no agreement to keep it in repair and the appellant is not liable for defects arising after the making of the lease. *Harple* v. *Fall,* 65 N. W. Rep. 913; *Kruger* v. *Farrant,* 13 N. W. Rep. 158; *Edmison* v. *Asleson,* 27 N. W. Rep. 82; *Miller* v. *Rinaulda,* 47 N. Y. 636. If the obstruction was washed into the conductor by the rain which fell on Sept. 27th, 1899, the appellant cannot be charged with negligence for failure to remove it. *Chicago Bottling Co.* v. *Mitton,* 41 Ill. App. 154; *Lindsay* v. *Leighton,* 22 N. E. Rep. 901; *Lane* v. *Scagel,* 31 Atl. Rep. 289. The mere failure to guard against certain results is not actionable negligence, unless under circumstances which might have been reasonably foreseen by a man of ordinary intelligence and prudence. *New Orleans, etc., Co.* v. *McEwan,* 22 So. Rep. 675; *Chicago, St. P. & Oma. Ry. Co.* v. *Elliott,* 55 Fed. Rep. 949. There was no implied covenant that the store was provided with drainage facilities suitable for the purpose. It is incumbent on the tenant to exercise proper care and precaution in the premises. *Wilkinson* v. *Clauson,* 12 N. W. Rep. 157; *Kruger* v. *Farrant,* 13 N. W. Rep. 158; *Foster* v. *Peyser,* 9 Cushing, 247; *Witty* v. *Matthews,* 52 N. Y. 512.

*Cochrane & Corliss,* for respondent.

The general rule that, in the absence of an agreement, the tenant is bound to make the necessary repairs and the landlord is not liable

for any injuries received by the tenant because the premises in the tenant's possession are not in repair, has been changed by the statute in this state. § 4080, Rev. Codes. Even at common law the landlord is bound to use ordinary care; to see to it that damage does not result to the tenant from the condition of other portions of the tenement under control of said landlord. *Quigley* v. *Mfg. Co.*, 50 N. Y. Supp. 98; *Bold* v. *O'Brien*, 12 Daley, 160; *Toole* v. *Beckett*, 67 Me. 554, 24 Am. Rep. 54; *Dollard* v. *Roberts*, 29 N. E. Rep. 104; *Peil* v. *Rheinhart*, 27 N. E. Rep. 1077; *Lindsay* v. *Leighton*, 22 N. E. Rep. 901; *Marshall* v. *Cohen*, 9 Am. Rep. 170; *Watkins* v. *Goodall*, 138 Mass. 533; *Looney* v. *McLean*, 129 Mass. 33; *Inhabitants* v. *Holbrook*, 9 Allen, 17; *Center* v. *Davis*, 39 Ga. 200; 2 Woods, Landl. & Tenant, 842, 846, 872; *Sawyer* v. *McGillicudy*, 17 Atl. Rep. 124; *Shipley* v. *Fifty Associates*, 101 Mass. 251; *Readman* v. *Cowan*, 126 Mass. 374; *Kirby* v. *Boylston, Etc.*, 14 Gray, 249. Where the landlord attempts to do anything with the premises, and, in the prosecution of the work, injury is done the tenant and such injury results from the manner in which the work is let, the landlord is liable, although the work has been done by an independent contractor. *Randolph* v. *Feist*, 52 N. Y. Supp. 109; *Wortheimer* v. *Saunders*, 70 N. W. Rep. 842; 2 Woods Landl. & Tenant, 844, 845.

Young, J. The plaintiff brought this action to recover damages for a partial destruction of certain household goods, which he claims was occasioned by defendant's negligence. The damage for which compensation is sought occurred on September 27, 1899, during a heavy rain storm, and was caused by water flowing through a hatchway in the roof of the Phillips Block, a tenement building situated in the city of Grand Forks, owned by the defendant, and into the apartments then occupied by the plaintiff and his family as tenants. The action is based upon the alleged negligence of the defendant in caring for the roof of said building. There is no claim that the roof was not properly constructed, or that the provision made for conveying the water therefrom was not adequate for that purpose. The plaintiff's contention is that the defendant negligently suffered the conductor pipe which was provided for carrying the water from the roof, and which furnished the only means for its escape, to become obstructed, with the result that the water backed up and flowed through a hatchway on the roof, and down into plaintiff's apartments, causing the damage of which he complains. The case was tried to the court without a jury. The trial court found for the plaintiff and assessed his damages at the sum of $60. The defendant has appealed from the judgment, and demands a review of the entire case in this court.

The building in question is described as a two-story brick structure, with a flat tin roof, which slopes from the front to the rear of the building. The walls of the building extend several feet above the roof, thus inclosing the roof by a continuous wall, without

openings. The water which accumulates on the roof is carried off by means of a conductor pipe 6 inches in diameter, which enters the roof at the lowest part thereof, and at the southeast corner. From the opening in the roof the pipe descends perpendicularly 6 inches, then slopes for 7 inches at an angle of about 45°, and then descends perpendicularly on the inside of and in the corner of the building, through the two stories, until it connects with the sewer. The hatchway referred to is about 13 feet from the rear end of the roof, and is about 12 inches higher than the lowest part of the roof. The first story of the building was rented as a store. The second story is divided into four flats, which were occupied by the plaintiff and three other tenants. The trial court found (and this finding is not disputed) that the roof of the building was not leased to the plaintiff or to any of the tenants, but that the same remained in the possession and under the control of the defendant, and that the defendant exercised control thereover by himself and the janitor of the building who was employed by the defendant for the purpose of looking after said building. The trial court also found "that prior to the 27th day of September, 1899, the defendant negligently suffered and caused the pipe or conductor constructed for the purpose of carrying off from said roof into the sewer the water accumulating thereon during times of rain to be choked and stopped up with rags and other material, and that defendant negligently failed to clean out the said pipe; * * * that the defendant did not actually know of the condition of the conductor referred to, but that he was chargeable with knowledge of said condition because of the fact that the same had existed for a long time prior to the 27th of September, 1899, and could have been easily ascertained by the exercise of due care in looking after the said conductor to see that the same was not stopped up; and the court finds that the defendant was negligent in failing to exercise due care in keeping the said conductor clean; that he failed to insert therein any screen or other device to prevent matter accumulating in said conductor, although such devices were in common use for such purpose, and that by reason of the fact that said roof was surrounded by a wall on all sides, rising above the same to the height of at least two feet, the risk of damage to the plaintiff and other tenants of said building from the stoppage of said conductor, causing water to accumulate on said roof, was greater than if there had been no such walls to prevent the flow of water from the roof down the outside of the building, and that the scuttle on said roof and the flashing were so constructed that the water could accumulate on said roof to sufficient depth to flow through said scuttle and back up under said flashing, and flow down upon the tenants below, and that, as a matter of fact, rain which fell upon the roof of said building on or about the 27th of September, 1899, was prevented from escaping from said roof through said pipe by reason of the same being stopped up through the negligence of defendant; that, in consequence

thereof, water accumulated upon said roof to such an extent that the same backed up and flowed through the said scuttle and under said flashing, and flowed down into the rooms so occupied by the plaintiff, in large volumes, wetting and damaging the plaintiff's carpets, furniture, curtains, shades, pictures, and other household goods, the property of the plaintiff, to his damage in the sum of $60."

It will be noted that this case does not present the mooted question as to whether the landlord or the tenant is responsible for injuries resulting from a defective condition of leased premises which arises during the tenancy. In this case, as has been stated, the roof was in the exclusive possession and control of the defendant, and was not leased to the plaintiff or any of the tenants. The obligation rested upon the defendant to keep the roof, the possession of which was retained by him, in proper repair and condition, so that his tenants would not, through his fault or neglect, be damaged or injured in their persons or goods. In this case, as in *Toole* v. *Beckett*, 67 Me. 545, 24 Am. Rep. 54,—a case very similar to the case at bar,—the tenants had no right to interfere with the roof, or control of it. "The defendant had such care and control for the benefit of himself and all his tenants," and, as said by the court in that case, by implication he undertook so to exercise his control as to inflict no injury upon his tenants. "If the landlord does not exercise common care and prudence in the management and oversight of that portion of the building which belongs to his special supervision and care, and damages are sustained by a tenant on that account he becomes liable for them. He is responsible for his negligence. *Priest* v. *Nichols*, 116 Mass. 401; *Kirby* v. *Association*, 14 Gray, 249, 74 Am. Dec. 682; *Gray* v. *Gaslight Co.*, 114 Mass. 149, 19 Am. Rep. 324; *Norcross* v. *Thoms*, 51 Me. 503, 81 Am. Dec. 588." In support of the foregoing rule of liability, see *Glickauf* v. *Maurer*, 75 Ill. 289, 20 Am. Rep. 238; *Inhabitants of Milford* v. *Holbrook*, 9 Allen, 17, 85 Am. Dec. 735; *Shipley* v. *Fifty Associates*, 106 Mass. 194, 8 Am. Rep. 318. As to portions of the building of which the landlord has control, he retains all of the responsibilities of a general owner to all persons, including the tenants of the building. *Looney* v. *McLean*, 129 Mass. 33, 37 Am. Rep. 295. See, also, to the same effect, *Friedenburg* v. *Jones*, 63 Ga. 612; *Jones* v. *Friedenburg*, 66 Ga. 505, 42 Am. Rep. 86; 2 Wood, Landl. & Ten. 843; 2 McAdam, Landl. & Ten. 1234; 2 Shear. & R. Neg. § 710.

The question which is decisive of defendant's liability to respond in damages in this case is purely a question of fact. He was, as we have seen, under obligation to exercise reasonable care and prudence in looking after the portion of the building in his possession and under his control, with a view to preventing injuries to his tenants and others. The question is, did he use such care in reference to the conductor pipe? The trial court found that he did not,

and that he was negligent in suffering it to become obstructed. After a careful examination of the evidence, we have reached the conclusion that this finding of the trial court is fully sustained. It is true, there is no evidence in the record from which it can be ascertained with certainty just when the pipe first became obstructed. It is evident, however, that it had been obstructed for some time. The first discovery of the fact appears to have been made during the storm. Only one witness testified as to the character of the obstruction. As soon as it was known that the pipe was stopped up, the tenants summoned one C. N. Barnes, a hardware merchant, to remove the obstruction. He testified as follows: "I discovered that at the rear of the building there was water standing within six inches from the top of the rear wall. Water was then coming down in the store. * * * I didn't know where the outlet was. * * * I knew it was some place in the back of the roof. * * * I located it in the corner, and tried to get it clear, but was unable to do it. I took some substance out of the pipe. How many times I don't know. I put my hand down in there, and got hold of what I could, and pulled it out. The stuff I pulled out seemed to pull pretty tough. Just what it was, I do not know. I don't know whether it was paper or cloth. It was something that pulled out in chunks or handfuls. I took out what I could with my hand each time. I got a stick and pounded in the hole, and after pounding some time the obstruction that was there went away. It was down three or four or five inches. I used all kinds of movements with the stick, and I pounded until I got some of the water to leave. The stuff that was in the pipe did not respond to the first stroke of the stick. I took both hands to it and pounded. Whatever I struck must have been solid or it would have gone. I pounded there some little time before the obstruction was removed." It is hardly reasonable to believe that an obstruction such as this witness describes could have been formed during the storm, and just before it was removed by him. We think that a fair and natural inference from the description given by the witness is that the substance he removed had been in the pipe for some time, and there is no evidence to repel this inference. On the contrary, such evidence as there is sustains the view that the substance which obstructed the pipe was not washed into it by the rainfall of September 27th. The defendant and two other witnesses testified that the roof was entirely free from rubbish of any kind a few days prior to the storm, and there is no evidence that any opportunity existed for a subsequent accumulation of rubbish on the roof. We are therefore led to the conclusion that the obstruction was not formed during the storm in question, but that it had existed for some time prior thereto. The question, then, is this: Was the defendant negligent in not knowing of the condition of the conductor pipe? We are agreed that he was. The defendant testified that he was upon the roof a great many times prior to September 27th, in connection with the

painting of the roof. While he testified that he swept the roof diligently and on numerous occasions, he does not state that at any time or on any occasion he inspected the pipe to see that it was open and in a fit condition to carry off the water. He knew that, if it was not open, water accumulating on the roof could not escape except through the hatchway. The obstruction in the pipe was near the top and could have been seen by a mere casual inspection. It was not enough for defendant to show that at different times he removed the rubbish which had accumulated on the roof. Common prudence and a proper regard for the rights of his tenants required that he should exercise reasonable care in seeing that the pipe was open and unobstructed. This he failed to do, and in this we find he was negligent. In opposition to our conclusion that the pipe was obstructed prior to September 27th, it is shown that the storm of that date was accompanied by a strong wind, and it is suggested by defendant's counsel that newspapers might have been blown upon the roof and washed into the pipe during the storm. We think the possibility is too remote to be seriously considered, in view of the fact that the evidence shows that the conductor pipe was adequate to carry off newspapers without difficulty. Further, the character of the obstruction, as described by the witness Barnes, emphatically negatives this theory of its origin. We base our conclusion as to defendant's negligence upon his failure to inspect the pipe to see whether it was or was not obstructed. Whether he was negligent in not protecting the opening of the pipe with a screen or other device is perhaps a debatable question. Upon this we express no opinion.

The conclusion of the trial court meets our approval, and we find that the damages awarded the plaintiff were properly assessed. Judgment affirmed. All concur.