Russell L. CHARD, Jr.,
Plaintiff–Appellee,

v.

IOWA MACHINERY & SUPPLY CO.,
INC., Defendant–Appellant.

No. 88–905.

Court of Appeals of Iowa.

July 26, 1989.

Douglas F. Staskal of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for defendant-appellant.

Thomas D. McMillen, Jr., Des Moines, for plaintiff-appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Defendant appeals from the judgment for plaintiff in district court for $56,554 on his claims for damages after he was terminated from employment. We affirm in part, reverse in part, and remand with instructions.

Plaintiff Russell L. Chard, Jr. was hired by Iowa Machinery & Supply Company, Inc. (IMSC) as a vice-president in charge of the industrial division. Chard's previous experience was in sales and he was hired to increase the lagging sales in the division. Chard began work in October of 1984, a time when Iowa was still considered to be in a recession. Evidence indicates his first three months on the job were considered to be an orientation period. Despite Chard's efforts, the division continued to lose money and company sales were well below Chard's projections. Chard was discharged on May 5, 1985, at which time he was given three weeks' severance pay. Chard brought the present action claiming under the employment agreement he was entitled to three months' severance pay and vacation pay. He also sought damages for emotional distress and exemplary damages.

The district court found Chard was hired for a minimum period of eighteen months and thereafter his employment was to be at will, finding the parties anticipated it would take twelve to eighteen months to turn the division around. Because Chard was dismissed after seven months, the trial court concluded he was entitled to eleven additional months of pay at $4,166 per month, or a total of $45,833. In addition, the court found the employment agreement called for three months' severance pay and deter-

mined Chard was entitled to the difference between that amount and the three weeks pay he received upon dismissal, for a total of $6,250 in severance pay. In addition, the court found Chard was entitled to vacation pay of $4,471. However, the court concluded there was not sufficient evidence to support the claim for tortious infliction of emotional distress and further ruled Chard was not entitled to exemplary damages for breach of contract. Judgment was entered for Chard for $56,554 plus interest at the legal rate from May 1, 1985.

IMSC appeals the decision of the district court, arguing the employment agreement provided if Chard was terminated for good cause he was to receive no pay, but if he was terminated in spite of good performance he was to receive three months' severance pay and nothing more. Thus, IMSC argues under the employment agreement the trial court erred by awarding Chard damages for eleven months' pay. IMSC also argues Chard was not entitled to any severance pay because he was terminated for cause pursuant to the employment agreement. IMSC also contends Chard was not entitled to vacation pay, but only three months' salary under the employment agreement.

Our scope of review is for errors at law. Iowa R.App. P. 4.

I. IMSC argues the district court erred in awarding Chard damages equal to eleven months' pay. They assert instead under the provisions of the employment agreement, Chard is only entitled (if entitled at all) to three months' severance pay. The district court found, and Chard argues, the employment agreement was "by no means complete or clear as to the terms of the agreement and the parties' intentions and understanding of the parties." The trial court found Chard had an eighteen-month contract and because he was performing this contract, he was entitled payment for eleven months which remained following his termination.

The handwritten employment agreement was entered into evidence as Plaintiff's Exhibit No. 1. The agreement

was divided into eleven subsections, including Item 7, which was entitled "Termination Agreement." It stated:

7. Termination agreement: Resignation—no pay. Terminated for cause (no performance, violation of company policy, insubordination, etc.)—no pay. Termination—in spite of good performance —3 months pay.

No where in the agreement is a clause indicating the period of employment was to be eighteen months, instead the agreement outlined Chard's salary, benefit package (insurance, stock options, leased vehicle), and vacation, all of which were to begin at the time Chard assumed employment. When we are asked to interpret an agreement which the parties have entered into themselves, our object is to ascertain the meaning and intention of the parties as expressed in the language used. *Gentler Store Products Co. v. Laub*, 179 N.W.2d 628, 630 (Iowa 1970). Our duty is to give effect to the language of the entire agreement in accordance with its commonly-accepted and ordinary meaning and not make a new agreement for the parties by arbitrary judicial construction. *Id.* "We will not resort to rules of construction where we thus find the intent of the parties is expressed in clear and unambiguous language." *Id.* at 631. We determine here as a matter of law the agreement is clear and unambiguous on its face and it was not necessary for the trial court to consider extrinsic evidence in determining the intent of the parties. The trial court found the provisions for termination in the agreement were only to apply after eighteen months. We do not agree with this interpretation. All eleven items listed in the agreement were benefits which began at the time Chard commenced his employment. There was no qualifying language indicating the termination provisions would apply only after eighteen months. It is not questioned here the parties have a right to bargain for termination provisions in an employment agreement, just as they have a right to bargain for health insurance and vacation. Here the parties did just that and their intent is clearly outlined in the employment agreement. Therefore, we find the trial

court erred in awarding Chard eleven months' salary as damages for the termination of his employment relationship and hold the only damages available were those covered under Item 7 of the agreement.

II. Next, IMSC argues the trial court erred in awarding Chard three months' severance pay because he was dismissed for good cause. IMSC argues in order to enforce this provision of the agreement it was necessary for the trial court to determine the meaning of the word "performance" as used in the provision and whether Chard was terminated in spite of good performance. The company argues there is no contractual basis for any right to termination pay for Chard unless he is terminated "in spite of his good performance."

■ Interpretation of a contract, the process of determining the meaning of the words used, is also a matter for the court to decide as a matter of law, unless it depends upon extrinsic evidence or choices among reasonable inferences to be drawn from it. The defendant argues here the trial court erroneously interpreted the word "performance" as a matter of law. We disagree. We see nothing in this record which indicates the trial court did anything more than consider the evidence submitted and determine Chard performed the contract and was fired for a "bottom line" which was beyond his control.

In its findings of fact, the trial court noted a number of extrinsic factors which contributed to defendant's industrial division continuing to lose money. The trial court observed the industrial division had not shown a profit for several years before Chard took over as division head. The court also noted during Chard's tenure of employment the Iowa legislature was drafting economic recovery legislation which included a tax incentive or abatement plan that would have reduced or eliminated sales tax on capital investments. This pending legislation had a chilling effect on sales while the legislature debated the issue. Customers were taking a "wait and see" approach until they determined whether legislation was going to pass. The trial court also noted Chard was held

accountable for projections which he developed during his three-month "orientation." And because both defendant and plaintiff knew plaintiff's expertise was in sales, there should have been an expectation on the defendant's part plaintiff's initial figures may not have been attainable.

■ The district court's findings of fact are binding upon us if supported by substantial evidence. Iowa R.App. P. 14(f)(1). Here we determine the determinations made by the district court were supported by substantial evidence, and we therefore affirm its order granting Chard three months' severance pay under the employment agreement.

**III.** IMSC next argues the trial court erred in awarding Chard additional vacation pay for 1985 and 1986 and ordering the judgment bear interest from May 1, 1985.

■ First, in regard to the vacation pay, we agree with the company that under the employment agreement Chard is not entitled to the amount of vacation pay the trial court granted. We determine Chard is entitled to all vacation which he had accrued over his seven months of employment minus the three days he had already taken. Thus, upon remand, the trial court shall determine the number of vacation days which Chard had accrued and enter its order accordingly.

■ Next, with regard to the interest which IMSC claims Chard is not entitled to, we find the case of *IBP Confidential Business Documents Litigation*, 755 F.2d 1300 (C.A.8 1985), on rehearing, 797 F.2d 632, to be instructive. In interpreting Iowa Code section 535.3, the court stated:

> [T]hat a compensatory damage award for tortious interference with existing employment was for damages incurred before complaint was filed and therefore, interest was appropriate on the entire amount of judgment, even though claim was made that damages were not sustained until after the complaint was filed.

It is uncontroverted Chard was fired on May 5, 1985. His damages under the severance clause of the contract were due to him then. Therefore, we find the trial court correctly computed the interest from the date of termination, not from the date on which the complaint was filed.

**IV.** We find no merit in defendant's claim the parties reached an accord and satisfaction of this dispute. Also, Mr. Chard is not entitled to punitive and exemplary damages for breach of contract or intentional infliction of emotional distress. We affirm the trial court on both of these issues.

We reverse the trial court's order in part; affirm it in part; and remand this matter with directions.

We also briefly note defendant filed a motion to strike plaintiff's brief due to apparent procedural infirmities. We have considered said motion and, although we believe our rules should be adhered to, we choose to deny defendant's motion in this matter.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.