Earl Dean KIMM, Russell L. Kimm, Kenneth K. Kimm, Dahlene P. Dellamuth, Regina F. Wichmann and Marian R. Paulsen, Plaintiffs,

v.

Charles Porter KIMM, Appellant/Cross–Appellee,

and

Harlan C. Kimm, and LaDonna M. Kimm, Appellees/Cross–Appellants,

and

Mary A. Zuber, General Motors Acceptance Corp., Jim Elwood Implement, Inc., and Gerald R. Pollock d/b/a Pollock Elevators, Appellees.

No. 89–1520.

Court of Appeals of Iowa.

Oct. 23, 1990.

Robert J. Leinen of Elwood, Elwood, Buchanan & Leinen, Marengo, for appellant.

Kenneth F. Dolezal of Dolezal, Miller, Lewis & Garrels, Cedar Rapids, for appellees/cross-appellants.

John M. Titler of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee Gerald R. Pollock d/b/a Pollock Elevators.

James E. Claypool of Claypool & Claypool, Williamsburg, for defendant Mary Zuber.

Matthew G. Novak and Terry J. Abernathy of Pickens, Barnes & Abernathy, Cedar Rapids, for defendant General Motors Acceptance Corp.

Kenneth R. Martens of Martens Law Office, Marengo, for defendant Jim Elwood.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

In 1973 Porter Kimm, along with Harlan Kimm and his wife, LaDonna, purchased a farm on contract as joint tenants with full right of survivorship and not as tenants in common from Mary Zuber. In February 1977 Harlan and LaDonna quit claimed their interest in the farm to their son, Charles. They also assigned all their interest in the real estate contract with Zuber to Charles. In October 1979 Porter Kimm, the father of Harlan and the other named plaintiffs, died intestate.

In 1982 Charles and the Porter Kimm Estate filed a petition against Harlan and LaDonna seeking their removal from the farm. In January 1985 a stipulated agreement concerning this litigation was filed of record. The decree provided for immediate possession of the property by the plaintiffs. In addition, the agreement provided the Porter Kimm estate would have a 25% ownership interest and Charles and his wife, Marcia, would have the remaining 75% interest in the farm. The parties also executed a separate agreement on January 21, 1985.

The agreement recited the ownership interests of the parties but provided the property would be sold and the proceeds would be distributed with 25% to the estate, 37.5% to Charles and Marcia, and 37.5% to LaDonna and her attorney. Taxes, contract payments, and other obligations were to be borne in the same ratio. Likewise, rents and other benefits were to be divided in the same ratio. LaDonna further agreed she would pay from her net share $10,000 to Charles and Marcia as payment for farm equipment of Charles' which was lost or destroyed.

Meanwhile, GMAC had obtained a judgment against Harlan in April 1979, Elwood obtained a judgment against Harlan in June 1981, and Pollock obtained a judg-

ment against Harlan in June 1984. All three filed liens against the property in question.

In 1989 plaintiffs filed this partition action seeking to sell the farm. Following the partition decree, the farm was sold. After a hearing, the district court entered its ruling concerning the distribution of the proceeds. The court awarded 25% to the estate, 37.5% to Charles, and 37.5% to Harlan. The court found the provision of the agreement to distribute the proceeds to LaDonna and not to Harlan to be fraudulent and done solely for the purpose of preventing the judgment creditors from collecting on their judgments. The award to Harlan was to be reduced by the claims from the three judgment creditors. After the creditors were paid, Charles was to receive $10,000 from Harlan's share. Charles filed an appeal, and Harlan and LaDonna filed a cross-appeal.

This is an action in equity for partition of real property under Iowa R.Civ.P. 270. Therefore, our scope of review is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings, but are not bound by them. Iowa R.App.P. 14(f)(7).

This partition action was brought by the heirs of the Kimm Estate. Upon a search of the property abstract, it was discovered three judgment creditors of Charles' father, Harlan, had filed liens on the property. The petition was amended to include them as indispensable parties. Iowa R.Civ.P. 273(a); *see Smith v. Piper*, 118 Iowa 363, 365, 92 N.W. 56 (1902) (reversed and remanded for determination of judgment lienholder's rights in partition action where he was not made a party as required).

The trial court found the January 21, 1985, agreement was a fraudulent conveyance in that Harlan was again attempting to shield himself from his creditors. Therefore, the trial court construed Harlan in LaDonna's place in the agreement. The parties do not appeal the trial court's finding of a fraudulent conveyance. We therefore accept the trial court's determination of this matter.

Charles contends he should have priority over the judgment creditors for Harlan's share of the proceeds from the partition action. His contention is based on the 1985 agreement wherein he was to be paid $10,000 for equipment lost or destroyed. The trial court, in an order for expanded findings, ruled the $10,000 was a lien against Harlan's share of the proceeds. The trial court held the $10,000 lien should follow those of the judgment creditors in priority. Its apparent rationale was the $10,000 lien dated from the time of the 1985 agreement. It is from this ruling Charles appeals.

## I. *Legal Title*

In 1977 Harlan and LaDonna quit claimed their interest in the property to Charles. In doing so, the joint tenancy interest between themselves and Porter Kimm was severed. From 1977 to 1985 Charles and his wife held a two-thirds interest in the property as tenants in common. Porter, and after his death his estate, held the remaining one-third interest.

All three creditors of Harlan filed valid judgment liens on Harlan's property in Iowa County after Harlan's interest was quit claimed and assigned to Charles. Charles argues since he, and not Harlan, was the legal titleholder during this period, the liens are invalid or alternatively, are invalid against him.

The trial court did not rule on whether the conveyance to Charles by Harlan in 1977 was fraudulent, although there is evidence the 1977 transfer was to avoid creditors. The issue is not before us, and we do not address it.

The issue is whether the judgment liens filed against the real property while Charles was the two-thirds legal owner were valid against the property. We look to the Iowa Code for the answer.

Judgments in the appellate or district courts of this state, or in the circuit or district court of the United States within the state, are liens upon the real estate owned by the defendant at the time of such rendition, and also upon all the defendant may subsequently acquire, for

the period of ten years from the date of the judgment.

Iowa Code § 624.23(1).

The judgment lien attaches to the real estate of the judgment debtor within the county where the judgment was entered. Iowa Code § 624.24. The judgment lien attaches against property held by the judgment debtor in another county only upon filing an attested copy of the judgment with the clerk of court for that county. *Id.*

In this case all three judgments in question were entered in Iowa County. The real property is also in Iowa County. Therefore, the judgment entries are effective as liens against the property if Harlan held an interest in it.

> [T]itle to a decedent's real estate descends and vests instantly upon the death of the decedent in the heirs, devisees, and spouse, subject to the payment of debts and costs of administration.... a prior judgment attaches the instant of the intestate's death.

*Central Fibre Products Co. v. Lorenz,* 246 Iowa 384, 391, 66 N.W.2d 30, 34 (Iowa 1954).

Porter Kimm died intestate in 1979. At the time he held a one-third interest in the property. Harlan's legal title to his share of Porter's estate vested at the instant of Porter's death. Thus, the judgment liens in question attached *immediately* to Harlan's distributive share of the real estate, *including any real property held by Porter in Iowa County* or any other county where the judgments were filed.

## II. *Equitable Interest*

■ Charles contends Harlan did not have legal title to the property in question. However, Charles does not claim Harlan lacked an *equitable* interest in the land. It is an ancient rule "[i]n this state a judgment is a lien upon the equitable interest of a debtor in real estate." *Lippencott, Johnson & Co. v. Wilson,* 40 Iowa 425, 427 (1875); *accord Vigars v. Hewins,* 184 Iowa 683, 686, 169 N.W. 119, 120 (1918). *See also Waller v. Gunderson,* 245 Iowa 1102, 65 N.W.2d 444, 445–46 (1954) and its relat-

ed case *Dvorak v. Dvorak,* 244 Iowa 1113, 60 N.W.2d 88, 91 (1953).

Harlan and others bought the land on contract in 1973 from Mary A. Zuber. In 1977 he and LaDonna conveyed the land and assigned their interest in the contract to their son, Charles. Harlan has contended all along he, and not Charles, is the real owner of the land. Harlan virtually admits in the record he made the conveyance to his son Charles to avoid his creditors. Harlan's significant testimony under oath in this respect is as follows:

Q. Mr. Kimm, in 1977 when you transferred this to your son for a dollar, why did you just get a dollar for it?

A. Why?

Q. Yes. Why?

A. That's a deep question. I forgot about you.

Q. Why didn't you receive what the property was worth instead of just $1?

A. Well, I was supposed to have it back.

Q. You were supposed to get the farm back?

A. After I got my debts paid.

Q. And when was that supposed to be?

A. Hu?

Q. When was that supposed to be? When were your debts supposed to be paid?

A. I never got a chance to pay them, not when they started firing the works at me.

.        .        .        .        .

Q. Why did you transfer it to him for $1 then?

A. Because I couldn't have it in my name.

Q. And why couldn't you have it in your name?

A. Because the creditors would have took it then.

*        *        *        *        *        *

The rule in transactions of this nature between members of the same family, one of whom is claimed to be insolvent, or in failing circumstances, will be closely scrutinized, and, if the taint of fraud

be found or is fairly to be inferred, they will not be upheld. *The grantee under such circumstances is not entitled to be considered a bona fide purchaser.*

*Pike v. Coon,* 217 Iowa 1068, 1070–71, 252 N.W. 888, 889 (1934) (emphasis added and citations omitted).

There is ample evidence in the record to conclude the 1977 conveyance from Harlan to Charles was a fraud upon Harlan's creditors. The trial court stated in its ruling:

As Mr. [Harlan] Kimm put it, he couldn't have the property in his own name because his creditors would have taken it. It appears to the Court that it is clear from the evidence and the circumstances surrounding the January 21, 1985 agreement, ... that Harlan Kimm was *again attempting to shield any interest he would have in the land reached by any judgment creditors* at that time by putting the interest in his wife's name rather than his own.

Trial court's ruling of June 14, 1989, at p. 6 (emphasis added).

Additionally, Harlan, and not Charles, made almost all the payments on the land contract. Harlan made the payments to the bank on a $10,000 loan for the land cosigned by his father, Porter. Harlan paid the real estate taxes on the land up to the 1985 agreement. Harlan and LaDonna lived on the land continuously until it was sold.

In 1982 a suit was filed by the estate and joined by Charles seeking possession of the property from Harlan and LaDonna. In his answer Harlan alleged he, and not Charles, was the full owner of the land. The 1985 agreement was in settlement of this lawsuit.

The 1985 agreement gave Porter's estate a 25% ownership interest, and Charles a 75% ownership interest. The farm was to be sold as soon as possible, and the proceeds divided. The estate was to receive 25% of the proceeds, and LaDonna (Harlan) and Charles each 37.5%. This agreement also contained the provision for $10,000 of LaDonna's (Harlan's) proceeds to go to Charles.

We note also, by way of interest, in the 1985 agreement the *ownership* interests in the land were stated to be 25% in the estate and 75% in Charles. However, the *proceeds* were to be split 25% to the estate, 37.5% to LaDonna (Harlan) and 37.5% to Charles.

Thus, according to the agreement, Charles' ownership interest was to be halved when it came time to distribute the proceeds. In this way Harlan attempted to defeat his creditors, *as their judgment liens only attached to real property* and not to personal property such as the proceeds. *See, e.g., United Central Bank of Des Moines v. Kruse,* 439 N.W.2d 849, 853 (Iowa 1989).

Further, each party was to bear the cost of contract payments, taxes, and other obligations and receive rent payments and other benefits, not in proportion to their ownership interests in the land, but rather *in proportion to their interest in the proceeds from its sale.* Disregarding the attempted fraudulent transfer by Harlan to LaDonna, we construe the agreement to read Harlan and Charles each receive a 37.5% *ownership* interest in the proceeds from sale of the property.

Viewing all this evidence in its totality, it is apparent Harlan held a substantial equitable interest in the property up until the time of its sale. This equitable interest amounts to at least 37.5%.

Harlan's equitable interest was sufficient for the liens to attach. *Vigars,* 184 Iowa at 686, 169 N.W. at 120; *Lippencott, Johnson & Co.,* 40 Iowa at 427. Additionally, Harlan's legal interest in the estate's portion of the property attached instantly upon the death of his father. *Central Fibre Products,* 246 Iowa at 391, 66 N.W.2d at 34.

We hold the liens of the judgment creditors attached to Harlan's interest in the real property, equitable or otherwise, immediately upon their rendition. Iowa Code § 624.23(1).

### III. *Priority of Liens*

■ Charles argues the $10,000 owed him by LaDonna (Harlan) in the 1985

agreement should date back to the original transfer of the realty from Harlan to Charles in 1977. It would thus have priority over the judgment lienholders involved here. To examine his claim, we look first to the language of the 1985 agreement itself.

The agreement was to resolve certain claims between the parties concerning the land, and possibly other claims as well. The agreement provides the property shall be sold and the proceeds distributed according to the agreement.

An attachment, "Exhibit 'B'," described the distribution scheme. One portion of 25% of the proceeds was to go to the estate, and two portions of 37.5% each were to go to Charles and LaDonna (Harlan) respectively.

> Additionally, LaDonna M. Kimm and her attorney, L.G. Klein, shall pay from their net share of the sale proceeds the sum of Ten Thousand Dollars ($10,000.00) to Charles P. Kimm and Marcia M. Kimm, *which payment is due to compensate Charles P. Kimm for the value of certain farm equipment which was previously sold or destroyed.*

1985 agreement, Exhibit "B" (emphasis added).

It is this language Charles relies on in arguing the $10,000 is a prior interest in the property and its proceeds. In reality Charles appears to be arguing the $10,000 constitutes part of the sale price of the land. The land was transferred to Charles by Harlan by quit claim deed in 1977. Now Harlan is receiving back a 37.5% interest in the property. Somehow Charles reasons this $10,000 should relate back to 1977 and take priority, perhaps as purchase money.

Regardless of Charles' argument, we are guided by the clear language of the agreement.

> Our duty is to give effect to the language of the entire agreement in accordance with its commonly-accepted and ordinary meaning and not make a new agreement for the parties by arbitrary judicial construction. "We will not resort to rules of construction where we thus find the intent of the parties is expressed in clear and unambiguous language."

*Chard v. Iowa Machinery & Supply Co.,* 446 N.W.2d 81, 83 (Iowa App.1989) (citing *Gendler Store Products Co. v. Laub,* 179 N.W.2d 628, 630 (Iowa 1970)).

"Exhibit 'B'" clearly provides LaDonna (Harlan) is to pay Charles $10,000 from the proceeds of the partition and sale "to compensate Charles P. Kimm for the value of certain farm equipment which was previously sold or destroyed." We find nothing vague and ambiguous about this language. LaDonna (Harlan) is essentially giving Charles a contractual lien for $10,000 from her (his) share of the sale proceeds. This is compensation for lost or destroyed farm equipment. Nowhere does any language recite this $10,000 is for the land itself. Its only relation to the land is it was to come from the proceeds of the land's sale.

Charles additionally refers to the problems he had collecting the machinery listed as his in "Exhibit 'C'" of the 1985 agreement. Apparently his father, Harlan, would not give up possession of it as provided by the agreement. There was even a fist fight over the matter. The equipment, or what remained of it, was only recovered by court order in 1989. Charles had to go to great lengths to recover the equipment.

We hold the portion of "Exhibit 'B'" pertinent to this case to be a contractual lien on Harlan's share of the sale proceeds from the partition. The lien operates in favor of Charles for lost or destroyed farm equipment of his in the possession of Harlan. As such, the contractual lien dates from the court decree approving the agreement. Thus, the liens of the three other judgment creditors have priority in time and are prior to Charles' claim for the $10,000. We affirm the trial court in this matter.

## IV. *Breach of Contract and Fraudulent Conveyance*

Charles contends Harlan has breached the 1985 agreement; therefore, the 1985 agreement should be null and void and the parties returned to their pre-1985 status.

Alternatively, he argues since part of the 1985 agreement was found to be fraudulent, the whole agreement must be found fraudulent and without effect.

> [E]quity abhors forfeitures. By the same token, forfeitures are not favorites of either law or equity, and when enforced, those claiming under them should show the equities are clearly on their side.

*Lovlie v. Plumb*, 250 N.W.2d 56, 63 (Iowa 1977).

> "Forfeitures are not favored in either law or equity and they are enforced only when it is shown the equities clearly require forfeiture." *Babb's, Inc. v. Babb*, 169 N.W.2d 211, 213 (Iowa 1969).

Charles contends since the 1985 agreement was a fraudulent conveyance as to Harlan's judgment creditors, it is voided as to him as well. We find this argument to be without merit. The substitution of Harlan for LaDonna merely places the parties in the very positions they should occupy in the agreement. Charles has not been prejudiced in any manner by this substitution. Indeed, there is evidence he may have been a party to the attempt to defeat the creditors.

Charles' argument the agreement has been materially breached and becomes null and void is also without merit. The 1985 agreement relates mainly to the sale of the real property and the distribution of the proceeds. The provisions about the farm equipment which were apparently breached by Harlan and which form part of the factual basis for this action are only collateral to the main agreement. The breach does not go to the heart of the contract.

> Rescission is considered an extraordinary remedy, however, and is ordinarily not available to a litigant as a matter of right but only when, in the discretion of the court, it is necessary to obtain equity. Our cases have established three requirements that must be met before rescission will be granted. First, the injured party must not be in default. Second, the breach must be substantial and go to the heart of the contract. Third, remedies at law must be inadequate.

*Potter v. Oster*, 426 N.W.2d 148, 151 (Iowa 1988) (citation omitted); *see also Ryko Manufacturing Co. v. Eden Services*, 823 F.2d 1215, 1239 (8th Cir.1987) (under Iowa law, breach must be material before it can become basis for termination of the contract).

## V. *Other Issues*

Harlan and LaDonna Kimm appeal the trial court's finding Charles is entitled to a $10,000 contractual lien against their share of the sale proceeds after paying the prior judgment creditors. They want the $10,000 lien wiped out entirely.

The thrust of their main argument, while confusing, appears to be: The trial court found some portions of the 1985 agreement to be fraudulent and so would not enforce them. Other provisions it did enforce included the $10,000 lien in favor of Charles, to which they object.

We find it ironic the very party who committed the fraudulent conveyance now argues the entire agreement should be set aside in its favor due to the fraudulent conveyance. "Parties whose misleading tactics, concealments, misrepresentations and defaults exacerbate the situation cannot invoke estoppel and laches." *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900, 908 (Iowa 1977). A party seeking equity must come with clean hands. Harlan and LaDonna Kimm are equitably estopped from arguing the fraudulent conveyance should operate in their favor in any manner.

Moreover, Harlan and LaDonna Kimm are estopped from arguing for an avoidance of the agreement by their own breach of that agreement. They are in the position of a party in default through their failure to deliver the farm machinery as agreed upon. *Potter*, 426 N.W.2d at 151; *Sergeant v. Leonard*, 312 N.W.2d 541, 547 (Iowa 1981).

Additionally, this issue appears to be raised for the first time on appeal. Several other issues are also raised both in the appellant's and appellee's argument, but they do not appear to have been raised in

the trial court. Therefore, we will not consider them here. *Beitz v. Horak*, 271 N.W.2d 755, 759 (Iowa 1978). "A trial court may not be put in error unless the issue was presented for ruling, and the failure to obtain a ruling is inexcusable unless the court refuses or fails to rule after a ruling is requested." *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 195 (Iowa 1980).

The trial court is affirmed.

Interest on the unpaid judgments of GMAC, Elwood Implement, and Pollock d/b/a Pollock Elevators is ordered at ten percent from the date of the entry of the trial court's decree in this action.

Costs of this appeal are to be paid one-half by appellant Charles Kimm and one-half by appellees Harlan and LaDonna Kimm.

AFFIRMED.

HABHAB, J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part. Charles received ownership of the property in 1977, prior to the judgment liens having been filed in Iowa County. Title to the property never went back to Harlan. The 1985 agreement affirmed ownership of the property in Charles and then provided certain amounts should be paid to Harlan when the property was sold. This agreement never vested title to any real estate in Harlan, so he had no interest to which a judgment lien would attach under Iowa Code section 624.23(1).

Harlan's interest was personal property. Therefore, there was no attachment of lien under section 624.23(1). Therefore, I would agree with Charles the $10,000 Charles owed him is not subject to claims of judgment creditors.

I would concur with the majority in all other respects.