7 F.3d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Edward C. LATEK and Daniel Sideman, Plaintiffs-Appellants,
v.
LEASEAMERICA CORPORATION and Investors Warranty of America,
Inc., Defendants-Appellees.
 No. 92-3363.
 United States Court of Appeals, Seventh Circuit.
 Argued May 12, 1993.
Decided Sept. 22, 1993.
Rehearing Denied Oct. 13, 1993.
 
 Before BAUER, Chief Judge, and KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The facts in this case, despite the sometimes complicating involvement of mathematics, are fairly straightforward. The plaintiffs Edward C. Latek and Daniel Sideman ("Latek") sold three companies owned by them to the defendant, LeaseAmerica Corporation, whose successor in interest is defendant, Investors Warranty of America, Inc. (jointly "LeaseAmerica"). In agreeing to that transaction, the parties entered into a Stock Purchase Agreement whereby LeaseAmerica would deposit funds into an escrow account for Latek if it utilized Latek's unused federal investment tax credits following the date of sale. The Stock Purchase Agreement gave LeaseAmerica a right of set-off against the escrow account in the event that LeaseAmerica became entitled to any contractual indemnities. A disagreement arose regarding these provisions and Latek eventually filed suit for breach of contract, claiming they were entitled to the escrow funds. LeaseAmerica answered the complaint, alleging it was entitled to a set-off pursuant to their agreement's indemnification provisions. The matter was submitted for trial by jury.
 
 
 2
 In an effort to simplify matters for the jury, at the instruction conference Latek and LeaseAmerica agreed that the district judge should withdraw the issue of interest from the jury. Latek and LeaseAmerica agreed that if the jury awarded a set-off, the parties would jointly compute the interest figure. As a part of the agreement to withdraw the question of interest from the jury, the parties acceded to the district judge taking the task of interest computation upon himself--if the parties were unable to come to an agreement on the amount due.
 
 
 3
 In the year at issue, the escrow account contained $1,325,021.00, of which $940,434.00 was principal and $384,587.00 was interest. The jury returned a verdict indicating that LeaseAmerica was entitled to a set-off of $310,521.00. Pursuant to their agreement, the parties were then required to determine how much of the $384,587.00 in interest LeaseAmerica's $310,521.00 generated.
 
 
 4
 After several attempts, the parties failed to agree on an interest figure. The district court, exasperated by the lack of agreement on what it saw as a simple matter, made good on its threat to resolve the issue itself. The district court used the following formula to calculate the interest due:
 
 
 5
 verdict principal
 
 
 6
 x total interest = interest due
 
 
 7
 total principal
 
 
 8
 The formula[1] yielded the following results:
 
 
 9
 $310,521
 
 
 10
 x $384,587 = $126,986
 
 
 11
 $940,434
 
 
 12
 Thus, adding the interest due ($126,986) to the verdict principal ($310,521), the district court concluded that LeaseAmerica was entitled to $437,507 from the escrow account, and that Latek should get the remainder ($1,325,021 - $437,507 = $887,514).
 
 
 13
 On appeal, Latek argues that the district court should have applied a formula specified in the Escrow Account Instructions to the Stock Purchase Agreement rather than the above percentage formula. That formula would calculate the interest rate by applying the prime rate of the Chase Manhattan Bank N.A. from the date LeaseAmerica provided Latek with appropriate documentation regarding indemnification. Using this formula, Latek argues that LeaseAmerica is due only $59,522.00 in interest.
 
 
 14
 In support of its argument, Latek cites the principle that courts should enforce the intent of parties as expressed in their agreement. See Chard v. Iowa Machinery & Supply Co., 446 N.W.2d 81, 83 (Iowa Ct.App.1989).[2] Waiver, estoppel, and subsequent inconsistent agreements, however, all qualify that precept. See Humiston Grain Co. v. Rowley Interstate Transportation Co., 483 N.W.2d 832, 834 (Iowa 1992). Thus, if Latek and LeaseAmerica agreed to use a percentage formula subsequent to contracting for the sale of Latek's business, or if Latek waived its objections thereto, the percentage formula would control regardless of the clarity of the original contractual terms.
 
 
 15
 The district court believed that the parties agreed to the use of a percentage formula for calculating interest. Whether the parties so intended is a question of fact, which we review under the clearly erroneous standard. See, e.g., A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc., 873 F.2d 155, 157 (7th Cir.1989). Although relevant discussion seemingly took place off the record, the information contained in the record is sufficient to support under the clearly erroneous standard the district court's belief that the parties had agreed to use a percentage formula to compute interest from the escrow account.
 
 
 16
 The parties first discussed the method of computing interest on the record during their jury instruction conference of August 5, 1992. The following discussion took place between the district judge, Latek's attorney, Mark Johnson, and Patrick Roby, LeaseAmerica's attorney:
 
 
 17
 THE COURT: Let's agree between us if there is a--if there is a judgment that has something to do with--with a chargeoff by way of indemnification, that out of the award you will--you will allocate the appropriate amount of interest that is in that thing.
 
 
 18
 MR. ROBY: Perfect.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 MR. JOHNSON: Yes. Just so we are clear, if the jury comes back and says that LeaseAmerica is entitled to, let's say, $100,000.00 worth of--of indemnification--
 
 
 22
 THE COURT: That you will adjust by and between yourselves the interest that is attributable to that amount.
 
 
 23
 MR. ROBY: And you will, if not, in very good humor [do it] for us.
 
 
 24
 THE COURT: I [will] not only do that, I will do something worse.
 
 
 25
 Although the parties framed this discussion in very general terms, the attorney for Latek never raised the issue of a contractual provision governing the computation of interest. Additionally, neither Latek nor LeaseAmerica objected to the possibility that if the two parties failed to agree on an interest computation, the district court would do so itself.
 
 
 26
 On August 19, 1992, the parties again discussed the computation issue on the record. That hearing, in which Francis Grossi, Jr. represented Latek and William Chittenden represented LeaseAmerica, further clarified the understanding of the parties:
 
 
 27
 MR. CHITTENDEN: But what your Honor stated today is basically my understanding of what our position is, that it was essentially a simple calculation, that the only--the only difference, as I understand what you're saying, is the amount for the ratio to be used. But other than that--because I think it's our position, from what Mr. Roby has advised me, that it was his understanding that out of the 1.3 [million dollars], there was--which is the total amount that had accrued thereon, that we had three hundred thousand in principal, their principal was about 940 [thousand dollars], and so that ratio was 33 [percent].
 
 
 28
 THE COURT: Whatever it is.
 
 
 29
 MR. CHITTENDEN: But the ratio procedure is based on the way we understood it to be.
 
 
 30
 MR. GROSSI: But there is now disagreement on what's the numerator and what's the denominator.
 
 
 31
 The only difficulty the attorney for Latek expressed was in determining the numerator and denominator in the percentage formula the district court applied. Latek's attorney made no mention of the district court's failure to use the formula specified in the Escrow Account Instructions. That omission is circumstantial evidence of a prior agreement to use the percentage formula.
 
 
 32
 The willingness of Latek to use the percentage formula was expressed even more clearly near the end of the hearing:
 
 
 33
 THE COURT: ... And you know, if everything was accruing, what difference does it make when it accrues from. It's all interest, and that's how you're supposed to divvy up the money is the way I would do it if it was me.
 
 
 34
 MR. GROSSI: Would your Honor like the calculation on that basis submitted?
 
 
 35
 THE COURT: I would like to have it on that basis and see where you are....
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 MR. GROSSI: Your Honor, the understanding that your Honor just expressed is that we get a judgment for [$310,000.00], and the interest as you have calculated.
 
 
 39
 THE COURT: Right. That's how I think you ought to do it.
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 THE COURT: I am taking you as what I believe you to be, officers of this court who are going to go about your business in accordance with what you told me you were going to do. I assume you are going to work it out. If I have to deal with it I will. I prefer not to. Fair enough?
 
 
 43
 MR. GROSSI: Yes, your honor.
 
 
 44
 Thus, not only did the attorney for Latek agree that the parties should compute interest based on the percentage formula, but he also acquiesced to the district court calculating the interest itself should Latek and LeaseAmerica fail to compute a figure. Additionally, the above passage makes crystal clear the district court's belief that the parties previously had agreed to use the percentage formula.
 
 
 45
 The reason courts of appeal apply the clearly erroneous standard to the factual findings of district courts is because of the proximity of district judges to the facts at issue; courts of appeal have only the record to examine. Here, the district court emphatically believed that the parties had agreed to use a percentage formula to compute interest on the escrow account, and the record supports its certitude. Additionally, the record supports the district court's belief that Latek and LeaseAmerica consented to the court computing the interest itself should the parties fail to agree on a method of computation. The decision of the district court to compute the interest at issue using a percentage formula was not clearly erroneous.
 
 
 46
 The record amply supports the belief of the district court that Latek and LeaseAmerica had agreed to compute interest using a percentage formula, and barring agreement, had acceded to the district court deciding the matter itself. That conclusion was not clearly erroneous, and the decision of the district court therefore is AFFIRMED.