# IN THE SUPREME COURT OF IOWA

No. 84 / 07–0315

Filed September 19, 2008

**STATE OF IOWA,**

Appellee,

**vs.**

**TIMOTHY ALLEN WILLARD,**

Appellant.

---

Appeal from the Iowa District Court for Linn County, Russell G. Keast (trial and sentencing) and Fae Hoover-Grinde (motion to dismiss), Judges.

Defendant contends the district court erred by not granting his motion to dismiss. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Harold L. Denton, County Attorney, and Jason A. Burns, Assistant County Attorney, for appellee.

**STREIT, Justice.**

Timothy Willard is a sex offender subject to the residency restrictions found in Iowa Code section 692A.2A (2005). He bought a house within two thousand feet of a school. The sheriff told Willard he could not live in the house. After Willard did not move out of the house, he was charged with violating section 692A.2A. He filed a motion to dismiss, claiming the two-thousand-foot rule was unconstitutional. The district court denied his motion, and Willard was convicted. We hold section 692A.2A is not a bill of attainder and does not violate equal protection or procedural due process. Willard failed to preserve for appeal his claim alleging interference with the right to interstate travel. We affirm.

### I. Facts and Prior Proceedings.

In April 1997, Willard pled guilty to two counts of indecent contact with his then twelve-year-old stepdaughter. The girl told her school counselor Willard touched her genitals and was pressuring her to have sex with him. As a result of his conviction, Willard is subject to the residency restrictions found in Iowa Code chapter 692A. A person who has committed a sexual offense against a minor may not live within two thousand feet of a school or child-care facility. Iowa Code § 692A.2A(2).

In February 2004, the federal district court for southern Iowa held the two-thousand-foot rule unconstitutional on several grounds and enjoined the State from enforcing the law. *See Doe v. Miller*, 298 F. Supp. 2d 844 (S.D. Iowa 2004). However, the Eighth Circuit Court of Appeals reversed the district court on April 29, 2005. *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005), *cert. denied*, 546 U.S. 1034, 126 S. Ct. 757, 163 L. Ed. 2d 574 (2005). A few days later—May 7, 2005—Willard signed a contract to purchase a house located at 120 First Street in Alburnett,

Iowa. He notified the Linn County Sheriff of his new address. *See* Iowa Code § 692A.2, .3 (requiring a person convicted of a sexual offense to register with the sheriff of the county of the person's residence).

In October 2005, the sheriff notified Willard his new house was within two thousand feet of a school. The sheriff gave Willard thirty days to establish a residence in compliance with section 692A.2A. After Willard did not move, the State charged him with violating the residency restrictions under section 692A.2A, an aggravated misdemeanor.

Willard filed a motion to dismiss, alleging section 692A.2A violated his right to procedural due process, constituted a bill of attainder, was vague and overbroad, violated his right to equal protection, unconstitutionally affected his family relationships, and violated his right to travel. The court held a hearing on the motion. Thereafter, the parties filed briefs with the district court. Willard briefed only three constitutional claims: bill of attainder, equal protection, and procedural due process. The district court denied Willard's motion to dismiss, concluding section 692A.2A did not violate Willard's "constitutional rights of equal protection nor procedural due process, and it is not a bill of attainder."

Willard waived his right to a jury trial and stipulated to the minutes of evidence. The district court found he violated the residency restrictions and imposed a $500 fine.

On appeal, Willard challenges the district court's denial of his motion to dismiss and contends the two-thousand-foot rule is a bill of attainder, violates his constitutional right to equal protection and procedural due process, and interferes with his constitutional right to travel. We affirm for the reasons that follow.

## II.    Scope of Review.

Constitutional claims are reviewed de novo.  *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001).

## III.    Merits.

Iowa's two-thousand-foot rule has withstood constitutional challenge on several occasions.  *See Miller*, 405 F.3d at 704–05; *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213 (Iowa 2008); *State v. Groves*, 742 N.W.2d 90, 93 (Iowa 2007); *State v. Seering,* 701 N.W.2d 655, 668 (Iowa 2005).   Willard attempts to distinguish those cases by claiming he "contracted for his home during a time when he could legally reside there" and then was subsequently "banished."  At the outset, we find this statement to be untrue.  Willard purchased his house several days after the Eighth Circuit reversed the district court decision finding the law unconstitutional.  Willard places much emphasis on the fact the federal district court's injunction was still in effect at the time he purchased his house.  On remand, the federal district court recognized an agreement of the parties to resume enforcement of the statute on September 1, 2005.  We conclude Willard was not legally entitled to reside in his house when he purchased it.   Rather, the State simply agreed to postpone *enforcement* of the statute.  Willard should not have been under any illusion that he was entitled to live in the house when he purchased it.  We turn now to his specific claims.

**A.    Bill of Attainder.**  A bill of attainder is a legislative act that inflicts punishment on a particular individual or readily identifiable group without a judicial trial.  *Atwood v. Vilsack,* 725 N.W.2d 641, 651 (Iowa 2006).  A bill of attainder is prohibited under the United States and Iowa Constitutions.  *See* U.S. Const. art. I, § 10 ("No State shall . . . pass any Bill of Attainder . . . ."); Iowa Const. art I, § 21 ("No bill of attainder

. . . shall ever be passed."). Willard claims section 692A.2A is a bill of attainder because it (1) identifies a class of individuals, (2) inflicts punishment on the individual member of the class, "solely and specifically because of their status as members of a class," and (3) fails to provide a judicial trial. We recently rejected this argument in *Wright*, 747 N.W.2d at 217–18.

Certainly, section 692A.2A identifies a class of individuals—sex offenders whose victims were minors. However, merely being subject to the residency restrictions is not punishment. *See Seering*, 701 N.W.2d at 668 (stating "we cannot conclude that the statute imposes criminal punishment under this record"). Willard was not punished solely for being a member of this group. Instead, he was punished for violating the residency restrictions that were enacted for the legitimate purpose of protecting children. *Id.* Moreover, he was afforded all of the protections of the judicial process when he was charged with violating section 692A.2A. His bill-of-attainder argument is therefore without merit.

**B.** **Equal Protection.** Willard claims section 692A.2A denies him equal protection under the law. The Fourteenth Amendment provides a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Similarly, the Iowa Constitution states "the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6.

The first step of an equal protection claim is to identify the classes of similarly situated persons singled out for differential treatment. *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 259 (Iowa 2007).

> If the statute treats similarly situated persons differently, the court must then determine what level of review is required—strict scrutiny or rational basis. A statute is subject to strict-scrutiny analysis—the state must show the classification is narrowly tailored to a compelling state interest—when it classifies individuals "in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin." All other statutory classifications are subject to rational-basis review in which case the defendant must show the classification bears no rational relationship to a legitimate government interest.

*Wright*, 747 N.W.2d at 216 (citing *In re Det. of Williams,* 628 N.W.2d 447, 452 (Iowa 2001)).

Willard fails to identify the classes of similarly situated persons singled out for differential treatment by the statute. *See State v. Philpott,* 702 N.W.2d 500, 503 (Iowa 2005) (stating "[d]efendant's equal-protection argument must fail because she has identified no similar class of persons that is treated more favorably under the act than she was"). In *Wright*, the defendant argued section 692A.2A violated his right to equal protection because he claimed the law was more likely to be enforced against sex offenders on probation as opposed to sex offenders not currently on probation. *Wright*, 747 N.W.2d at 216–17. We held the two groups were not similarly situated because one group is subject to state monitoring while the other is not. *Id.* at 217. We also noted Wright failed to show section 692A.2A treated the classes differently. *Id.* While we acknowledged there may be some truth to Wright's enforcement argument, we noted Wright had failed to show sex offenders not on probation escaped prosecution for violating section 692A.2A. *Id.*

Willard takes a different tack. He attempts to trigger strict scrutiny by claiming section 692A.2A "severely impairs his ability to make a home with his family," which he deems a fundamental right. *See Moore v. City of E. Cleveland,* 431 U.S. 494, 499, 97 S. Ct. 1932, 1935,

52 L.Ed.2d 531, 537 (1977) (striking down a zoning ordinance because it unconstitutionally interfered with "freedom of personal choice in matters of marriage and family life" by "select[ing] certain categories of relatives who may live together and declar[ing] that others may not").  We disagree.

"[A]n alleged infringement of a familial right is unconstitutional only when an infringement has a direct and substantial impact on the familial relationship."  *Seering*, 701 N.W.2d at 663.  The two-thousand-foot rule does not prevent sex offenders from living with their families.  Willard's real complaint is the rule prevents him from living in the house of his choosing.  However, in *Seering*, we held "freedom of choice in residence is . . . not a fundamental interest entitled to the highest constitutional protection."  *Id.* at 664.  Thus, "an interest in choice of residency is entitled to only rational basis review."  *Id.*

Under the rational-basis test, we must determine whether the two-thousand-foot rule is rationally related to a legitimate governmental interest.  *Ames Rental Prop. Ass'n*, 736 N.W.2d at 259.  Under this deferential standard, the law is valid unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious.  *Id.*  A statute is presumed constitutional and the challenging party has the burden to "negat[e] every reasonable basis that might support the disparate treatment."  *Id.*

In *Seering*, we found a reasonable fit between the government interest (public safety) and the means utilized by the State to advance that interest (the two-thousand-foot restriction).  *Seering*, 701 N.W.2d at 665.  Although the two-thousand-foot rule is not necessarily the perfect protection against the danger posed by sex offenders, "perfection is not necessary to meet the rational basis standard."  *Id.*  We have previously

acknowledged "when applying a rational basis test under the Iowa Constitution, changes in the underlying circumstances can allow us to find a statute no longer rationally relates to a legitimate government purpose." *Groves*, 742 N.W.2d at 93. However, Willard has not articulated any reason why our conclusion in *Seering* was incorrect and has not developed an evidentiary basis for this court to conclude the statute fails to promote a legitimate government interest. Instead, he argues he should have an unfettered right to choose his house.[1] Because we rejected that argument in *Seering*, this claim must fail.

**C.** **Procedural Due Process.** Willard claims section 692A.2A denies him procedural due process under the Fourteenth Amendment and article I, section 9 of the Iowa Constitution. " 'A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest.' " *Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 690 (Iowa 2002)). Accordingly, the first step in any procedural due process inquiry is to determine whether a protected liberty or property interest is involved. *Id.* Such liberty interests have their source in the Federal Constitution and "include such things as freedom from bodily restraint, the right to contract, the right to marry and raise children, and the right to worship according to the dictates of a person's conscience." *Id.* Protected property interests " 'are created and their dimensions are defined' not by the Constitution but by an independent source such as state law." *Id.* (citation omitted).

---

[1]Willard does claim he will "face a huge financial loss if forced to sell his property and buy another to replace it." Even if that were true, he bought his house a few days after the Eighth Circuit found the two-thousand-foot rule to be constitutional. If he was hoping the court's panel decision would be reversed *en banc*, that was a risk he chose to accept when purchasing the house.

Once it is determined a protected interest is at issue, we weigh three factors to determine what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976). At the very least, procedural due process requires "notice and opportunity to be heard in a proceeding that is 'adequate to safeguard the right for which the constitutional protection is invoked.'" *Seering,* 701 N.W.2d at 665–66 (quoting *Bowers,* 638 N.W.2d at 691). However, "'[n]o particular procedure violates [due process] merely because another method may seem fairer or wiser.'" *Id.* (quoting *Bowers,* 638 N.W.2d at 691).

Willard contends that, because section 692A.2A interferes with his right to contract, he is entitled to a predeprivation hearing. *See Bowers,* 638 N.W.2d at 691 (recognizing the right to contract is a protected liberty interest). However, his right to contract is not directly affected by the two-thousand-foot rule. Nothing prevents him from purchasing the house, only from living there.

Assuming *arguendo* a protected liberty or property interest is at stake, Willard has failed to prove the procedures in place are constitutionally inadequate. Willard contends he is entitled to an individualized hearing to determine whether he is dangerous before being subjected to the residency restrictions. This argument was rejected in *Miller.* There, the Eighth Circuit said "'due process does not entitle [a person] to a hearing to establish a fact that is not material under the

[state] statute.' " *Miller*, 405 F.3d at 709 (quoting *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7, 123 S. Ct. 1160, 1164, 155 L. Ed. 2d 98, 104 (2003)).

> The [residency] restriction applies to all offenders who have been convicted of certain crimes against minors, regardless of what estimates of future dangerousness might be proved in individualized hearings. Once such a legislative classification has been drawn, additional procedures are unnecessary, because the statute does not provide a potential exemption for individuals who seek to prove that they are not individually dangerous or likely to offend against neighboring schoolchildren.

*Id.* The court concluded,

> [u]nless the [sex offenders] can establish that the *substantive* rule established by the legislative classification conflicts with some provision of the Constitution, there is no requirement that the State provide a process to establish an exemption from the legislative classification.

*Id.*

In *Seering*, we rejected a similar argument for a hearing to request "an exemption based on difficulty of finding a suitable place to live outside the two-thousand-foot restriction." *Seering*, 701 N.W.2d at 666. We said "[b]ecause there are no exemptions in the statute, Seering was not entitled to a hearing before he was charged under the statute to attempt to persuade the court that the statute should not be applied to him." *Id.* Moreover, we found "the minimum protections necessary under due process would be met by the notice under the statute and the trial." *Id.* We see no reason to revisit our conclusion in *Seering.* Section 692A.2A does not violate procedural due process.

**D. Right to Travel.** Finally, Willard claims section 692A.2A violates the right to interstate travel by limiting the ability of sex offenders to establish residences in towns or cities. He states section 692A.2A deters sex offenders from immigrating to Iowa from other states.

The fundamental right to interstate travel recognized by the Supreme Court protects interstate travelers against two sets of burdens:  "the erection of actual barriers to interstate movement" and "being treated differently" from intrastate travelers.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276–77, 113 S. Ct. 753, 763, 122 L. Ed. 2d 34, 51 (1993).

There are at least three problems with this claim.  First, Willard did not preserve error on his right to travel claim.  He failed to brief that ground to the district court and failed to obtain a ruling on that basis.  *See Kimm v. Kimm*, 464 N.W.2d 468, 475 (Iowa Ct. App. 1990) (holding "the trial court may not be put in error unless the issue was presented for ruling, and the failure to obtain a ruling is inexcusable unless the court refuses or fails to rule after a ruling is requested").

Second, he has failed to mention how *his* right to interstate travel has somehow been impinged.  A "litigant cannot 'borrow the claim of unconstitutionality of another.' "  *State v. Hepburn*, 270 N.W.2d 629, 631 (Iowa 1978).

Finally, Willard fails to recognize the Eighth Circuit considered and rejected this claim in *Miller*.  There, the court said section 692A.2A

> imposes no obstacle to a sex offender's entry into Iowa, and it does not erect an "actual barrier to interstate movement." There is "free ingress and regress to and from" Iowa for sex offenders, and the statute thus does not "directly impair the exercise of the right to free interstate movement."  Nor does the Iowa statute violate principles of equality by treating nonresidents who visit Iowa any differently than current residents, or by discriminating against citizens of other States who wish to establish residence in Iowa.

*Miller*, 405 F.3d at 712 (citations omitted).  For these reasons, Willard's right to travel claim must also fail.

**IV.    Conclusion.**

We conclude Iowa Code section 692A.2A is not a bill of attainder and does not violate equal protection or procedural due process.  Willard failed to preserve for appeal his right to travel claim.

**AFFIRMED.**