# IN THE SUPREME COURT OF IOWA

No. 08–0255

Filed September 4, 2009

**ROBERT PAUL FORMARO,**

Appellant,

vs.

**POLK COUNTY, IOWA; CITY OF
ANKENY, IOWA and STATE OF IOWA,**

Appellees.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Plaintiff seeks declaratory judgment that application of state sex offender residency restrictions is unconstitutional as to him. **AFFIRMED.**

Alfredo Parrish of Parrish Kruidenier Dunn Boles Gribble Parrish Gentry & Fisher, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant Attorney General, for appellee State.

John P. Sarcone, Polk County Attorney, and Michael B. O'Meara and Roger J. Kuhle, Assistant Polk County Attorneys, for appellee Polk County.

Harry Perkins, III and Jason W. Miller of Patterson Law Firm, L.L.P., Des Moines, for appellee City of Ankeny.

**APPEL, Justice.**

In this case, we are again called upon to consider constitutional challenges to Iowa Code section 692A.2A (2005),[1] commonly known as the 2000-foot rule, which limits places where certain sex offenders may reside within the state. The appellant sought a declaratory judgment that Iowa Code section 692A.2A violates his state and federal constitutional rights because it: (1) infringes upon his right to travel and freedom of association, (2) utilizes terms that are impermissibly vague or overbroad in violation of due process, (3) is an unconstitutional bill of attainder, and (4) is an ex post facto law. For the reasons expressed below, the district court judgment dismissing each of these claims is affirmed.

## I. Factual and Procedural Background.

At age fifteen, Robert Formaro was found as a juvenile to have committed sexual abuse in the second degree against another minor. The Polk County Juvenile Court ordered Formaro not be placed on the sex offender registry for the offense because the court found that there was a low risk that Formaro would reoffend.

Two years later, the plaintiff participated in a burglary of a home. While an adult resident of the burglarized home was sexually assaulted, Formaro did not participate directly in the assault. Formaro pled guilty to burglary, received an indeterminate sentence of ten-years imprisonment, and was incarcerated at the Mt. Pleasant Correctional

---

[1]During the pendency of this action, Polk County filed a motion to dismiss it as a party due to the Iowa General Assembly's significant changes to Iowa Code chapter 692A, including the repeal of section 692A.2A. 4 Iowa Legis. Serv. 126, § 31 (West 2009). We, nevertheless, do not believe the legislative action moots Formaro's claim. The 2000-foot rule was substantially readopted. *Id.* § 14. While minor structural changes exist, we do not believe any of the revisions are material to the claims presented here. As such, we deny Polk County's motion to dismiss and address the merits of Formaro's constitutional arguments.

Facility. While at Mt. Pleasant, Formaro was not required to participate in sex offender treatment programs, but was placed upon the sex offender registry.

When Formaro was paroled in November 2004, he lived with his parents in Ankeny with the approval of his probation officer. In September 2005, however, David Lockridge, Formaro's new parole officer, discovered that Formaro's parents' home was within 2000 feet of an elementary school. As a result, Lockridge informed Formaro that by living at his parents' home he was in violation of the 2000-foot rule. In October, Formaro was served with a notice of violation under Iowa Code section 692A.2A and given five days to move out of his parents' home. After receiving the notice, Formaro's mother, Barbara Leonard, began to search for alternative housing while Formaro himself continued to work at the family's restaurant, where he earned between $600 and $1200 per month.

After searching for eight to twelve hours for a residence in Ankeny, Leonard located only one apartment that fell outside the 2000-foot limitations, but there were no vacancies. She then began to search in Altoona, but after eight hours of effort could find no available rental properties that were outside the 2000-foot limitations. Leonard then turned to Des Moines, where she found one acceptable rental property. Formaro's application, however, was rejected because the landlord considered Formaro to be an undesirable tenant due to his burglary conviction. She did not look in unincorporated areas of Polk County because "they just don't have apartments in these unincorporated areas much . . . ." Finally, Leonard looked in West Des Moines, but was also unable to find a rental property that complied with that city's restrictions for persons listed on the sex offender registry.

While Leonard was unable to secure housing for Formaro, Lockridge found him a place to live in a Des Moines motel for $800 a month. After the evidentiary hearing in this matter, Formaro secured housing at an apartment in Des Moines for $400 per month.

In November 2005, Formaro filed a four-count petition in district court against the State of Iowa, Polk County, and the City of Ankeny. In Count I, Formaro sought a declaration that he was not subject to the 2000-foot rule. In Count II, he sought a declaration that the 2000-foot rule was unconstitutional on its face and as applied to him. In Count III, Formaro sought monetary relief under federal law. In Count IV, Formaro sought injunctive relief and requested an emergency hearing to address his residency restrictions. Each defendant filed a motion to dismiss the petition.

After a hearing in December, the district court denied Formaro's application for injunctive relief. The district court noted that Formaro had found a permissible residence. The fact that Formaro might have to pay more than he would like was not sufficient irreparable harm. Further, based on legal precedents from this court and the Eighth Circuit, the district court concluded that Formaro had not shown a strong likelihood of success on the merits of his claims. The district court, however, denied the motions to dismiss Polk County and the City of Ankeny.

The State filed a motion to reconsider, noting that the district court failed to address its separate motion to dismiss. The district court in January entered an order dismissing Count I against all defendants and Count III against the State, but allowing the remaining claims to go forward.

With the consent of the parties, the case was submitted to the district court on the record established at the December hearing on the application for a temporary injunction. The district court held that Formaro's constitutional claims were without merit. Formaro filed a timely notice of appeal.

## II. Standard of Review.

The issues remaining on appeal concern the constitutional application of sexual offender residency restrictions to Formaro. The court reviews constitutional claims de novo. *State v. Groves*, 742 N.W.2d 90, 92 (Iowa 2007).

## III. Discussion.

**A. Right to Travel and Freedom of Association.** Almost half a century ago, the United States Supreme Court recognized a federal constitutional right to interstate travel. *United States v. Guest*, 383 U.S. 745, 758, 86 S. Ct. 1170, 1178, 16 L. Ed. 2d 239, 249 (1966). The textual source for the fundamental right, however, is uncertain. At times, it has been attributed to the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment and to the Commerce Clause or has been inferred from the federal structure of government created by the Federal Constitution. *Att'y Gen. v. Soto-Lopez*, 476 U.S. 898, 902, 106 S. Ct. 2317, 2320, 90 L. Ed. 2d 899, 905 (1986).

The fundamental right to travel has three recognized components. *Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 1525, 143 L. Ed. 2d 689, 702 (1999). First, a citizen of one state may enter and leave another state. *Id.* Second, a citizen of one state has "the right to be treated as a welcome visitor rather than as an unfriendly alien when temporarily present" in another state. *Id.* Third, a citizen of one state who elects to become a permanent resident of another state has the right to be treated

like other citizens of the second state. *Id.* In addition, the freedom to travel is sometimes seen as an essential means of effectuating other rights, such as freedom of association and freedom of speech. *Aptheker v. Sec'y of State*, 378 U.S. 500, 517, 84 S. Ct. 1659, 1670, 12 L. Ed. 2d 992, 1004 (1964).

Recognition of the fundamental right to interstate travel has led to wide speculation regarding the existence of a corresponding right to intrastate travel. This court, however, has not yet expressly embraced such a right. In *City of Panora v. Simmons*, 445 N.W.2d 363 (Iowa 1989), this court declined to strike down a municipal juvenile curfew law, with the majority concluding that the "right of *intracity* travel is not a fundamental right . . . ." *Simmons*, 445 N.W.2d at 369 (emphasis added). Justice Lavorato dissented, noting, "A hallmark of a free society, the right to travel, is perhaps the most cherished of all our fundamental rights." *Id.* at 371 (Lavorato, J., dissenting).

Several federal circuit courts after *Simmons*, however, have recognized a fundamental right to intrastate travel under the federal constitution. *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002); *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990); *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990). The United States Supreme Court has yet to explicitly weigh in on the issue, though some jurists have found support for a federal right to intrastate travel in its precedent, especially Justice Douglas's concurrence in *Aptheker*. *See Simmons*, 445 N.W.2d at 371 (Lavorato, J., dissenting).

This court revisited the constitutionality of juvenile curfew statutes three years after *Simmons* in *City of Maquoketa v. Russell*, 484 N.W.2d 179 (Iowa 1992). While this court unanimously found that curfew ordinance unconstitutional, the holding was based on the ordinance's

impermissible infringement on First Amendment freedoms and not exclusively on a right to intrastate travel. *Russell*, 484 N.W.2d at 183–86. *Russell* stands for the proposition that an ordinance may infringe on First Amendment freedoms, including the freedom of association, by restricting intrastate travel. *Id.* The existence and breadth of a federal and state constitutional right to intrastate travel thus remains a live wire.

Formaro invites us to recognize those rights here and argues that Iowa Code section 692A.2A on its face violates his state and federal right to intrastate travel and freedom of association. He claims that the statute effectively prohibits him from traveling to any location where he may fall asleep within the 2000-foot zone, bars him from participating in overnight political assemblies, overnight religious assemblies, or any other overnight lawful assembly, including family gatherings, and prevents him from accessing medical care by criminalizing any effort to receive medical services involving the use of anesthetic or overnight stays in area hospitals, all of which fall within 2000 feet of a protected location.

We conclude that it is not necessary in this case to determine whether there is a federal or state constitutional right to intrastate travel because, even if such rights exist, there has been no violation in this case. As will be demonstrated in the next section, Formaro's reading of the sex offender residency statute is too broad. The 2000-foot rule dictates where Formaro may reside but does not implicate the traditional protections of the freedom of travel. As noted by the Court of Appeals for the Eighth Circuit, when addressing the same issue in *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005):

> The Iowa residency restriction does not prevent a sex offender from entering or leaving any part of the State, including areas within 2000 feet of a school or child care

facility, and it does not erect any actual barrier to intrastate movement. . . . By contrast, the decisions finding infringement of a fundamental right to intrastate travel have involved laws that trigger concerns not present here—interference with free ingress to and egress from certain parts of a State . . . or treatment of new residents of a locality less favorably than existing residents . . . .

*Miller*, 405 F.3d at 713.

While this court is free to interpret the state constitutional guarantee of a right to travel differently than federal precedent, we see no reason to consider doing so in this case. Unlike the minors in *Russell*, Formaro is free both day and night to attend political meetings, religious services, or other gatherings, both in and outside the protected zone, either individually or collectively. *Russell*, 484 N.W.2d at 185–86. On its face, therefore, the 2000-foot rule does not impede Formaro's freedom of travel or right to association. *See also Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016–17 (8th Cir. 2006) (upholding an Arkansas sex offender registration statute that prohibited high-risk, registered sex offenders from living within 2000 feet of a school or daycare center against a claim that the statute violated the constitutional right to intrastate travel).

**B. Vagueness.** The Due Process Clause of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "Among other things, the Due Process Clause prohibits enforcement of vague statutes under the void-for-vagueness doctrine." *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007). A similar prohibition has been recognized under the Iowa due process clause found in article I, section 9 of the Iowa Constitution. *State v. Todd*, 468 N.W.2d 462, 465 (Iowa 1991). As we recently noted,

> There are three generally cited underpinnings of the void-for-vagueness doctrine. First, a statute cannot be so vague that it does not give persons of ordinary understanding fair notice that certain conduct is prohibited. Second, due process requires that statutes provide those clothed with authority sufficient guidance to prevent the exercise of power in an arbitrary or discriminatory fashion. Third, a statute cannot sweep so broadly as to prohibit substantial amounts of constitutionally-protected activities, such as speech protected under the First Amendment.

*Nail*, 743 N.W.2d at 539. In assessing whether a statute is void-for-vagueness this court employs a presumption of constitutionality and will give the statute " 'any reasonable' " construction to uphold it. *State v. Millsap*, 704 N.W.2d 426, 436 (Iowa 2005) (quoting *State v. Hunter*, 550 N.W.2d 460, 462 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 311–12 (Iowa 2000)).

Formaro asserts that section 692A.2A is void for vagueness because the term "reside" does not adequately convey what conduct is prohibited and invites arbitrary enforcement. While the term "residing" is not explicitly defined in section 692A.2A, section 692A.1(8) defines "residence" as "the place where a person sleeps, which may include more than one location, and may be mobile or transitory." Formaro claims this statutory definition of "residence" does not end the confusion; it increases it. Formaro claims that the definition of "residence" includes mobile and transitory locations, thereby removing the notion of permanency ordinarily associated with the term "reside."

In essence, Formaro claims that the statute explicitly rejects the common understanding of "reside" and then fails to replace it with a definition that can be widely understood and equitably enforced. People reading the statute thus cannot glean what conduct is prohibited. Moreover, Formaro asserts that the definition of "sleeps" is also vague as it is unclear whether this term encompasses a durational requirement,

includes only sleep at a fixed location, encompasses any loss of consciousness so as to prevent the use of general anesthesia, or includes sleep at a public place.

We find Formaro's reading of the statute contrary to its plain meaning and contrary to legislative intent. Just as the district court, we believe use of the term "sleeps" in section 692A.1(8) in connection with the definition of "reside" means habitual sleep in a home. Note that the legislature did not define a residence as a place where a person could sleep or has slept which would be more consistent with Formaro's construction. Instead, the legislature used the term "sleeps," which connotes more than a singular occurrence. Moreover, reading the statute as a whole, it is clear that the legislature wanted to prevent sex offenders from *living* within 2000 feet of a school or child care center, not casual sleep within a prohibited zone. The use of the term "mobile" and "transitory" in Iowa Code section 692A.1(8) modifies the term "residence," not "sleeps," and was designed to include within its scope vehicles, mobile homes, or shelters.

Rather than reject the common understanding of residence, as Formaro suggests, we believe that the statutory definition incorporates a permanency notion. While it is true that under our construction a sex offender could have more than one residence, instead of making the statute unconstitutionally vague, we believe this was the clear intention of the legislature. By tying the definition of "residence" to habitual sleep, the legislature was attempting to close a potential loophole in the statute which would allow a registered sex offender from establishing an "official" residence outside the prohibited zone while living within a protected area.

Our reading of Iowa Code sections 692A.1(8) and 692A.2A is consistent with other jurisdictions that have considered the issue in the context of sex offender statutes. *See Sellers v. State*, 935 So. 2d 1207, 1213 (Ala. Crim. App. 2005) (holding use of term "living accommodation" in adult criminal sex offender statute not unconstitutionally vague); *State v. Sturch*, 921 P.2d 1170, 1176 (Haw. Ct. App. 1996) (finding phrase "sleeping place" not vague as it meant place of human habitation).

**C. Overbreath.** As noted above, overbreath claims are derived from the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution. *See Russell*, 484 N.W.2d at 181. Overbreath analysis applies where a statute sweeps too broadly and substantially chills First Amendment rights. *Id.*

Formaro claims that the 2000-foot rule is overbroad and impinges on the exercise of his First Amendment freedoms by preventing him from participating in overnight political, religious, family, or other assemblies. He also claims it will prevent him from receiving necessary medical treatment, which he claims implicates First Amendment rights.

We do not agree. As noted previously, under a proper reading of section 692A.2A, Formaro can lawfully attend an all-night religious service, family gatherings, or political rallies even within a protected area. While the 2000-foot rule impinges on where Formaro may establish a residence, there is no fundamental right to live where you want and certainly not one based upon the First Amendment. *Miller*, 405 F.3d at 714; *People v. Leroy*, 828 N.E.2d 769, 776 (Ill. App. Ct. 2005) (holding statute which prohibited child sex offenders from living within 500 feet of school was not unconstitutionally overbroad as statute did not prevent him from living with family, but merely restricted where he was permitted to do so, nor did it prohibit the offender from visiting with his family on a

daily basis). As Formaro's First Amendment freedoms are not implicated by section 692A.2A, his overbreath claim must fail.

**D.  Bill of Attainder.**  Both the United States Constitution and the Iowa Constitution prohibit the legislative enactment of bills of attainder. U.S. Const. art. I, § 10 ("No State shall . . . pass any Bill of Attainder . . . ."); Iowa Const. art. I, § 21 ("No bill of attainder . . . shall ever be passed."). A bill of attainder is a legislative act that inflicts punishment on a particular individual or readily identifiable group without a judicial trial. *Atwood v. Vilsack*, 725 N.W.2d 641, 651 (Iowa 2006). "The danger of such a law is that it deprives the accused of the protection afforded by judicial process." *State v. Swartz*, 601 N.W.2d 348, 351 (Iowa 1999). "A bill of attainder requires three elements: specificity as to the target of the legislation, imposition of punishment, and the lack of a judicial trial." *State v. Phillips*, 610 N.W.2d 840, 843 (Iowa 2000).

This court has already determined that the residency restrictions found in section 692A.2A do not constitute a bill of attainder. *State v. Willard*, 756 N.W.2d 207, 212 (Iowa 2008); *Wright v. Iowa Dep't of Corrs.*, 747 N.W.2d 213, 218 (Iowa 2008). In *Willard*, this court determined that although the 2000-foot rule targeted a readily-identifiable group—sex offenders whose victims were minors—the chapter did not constitute a bill of attainder as the residency restrictions did not constitute punishment. *Willard*, 756 N.W.2d at 212. Additionally, we held that section 692A.2A did not constitute a bill of attainder as those subject to the restrictions were afforded due process of law. *Wright*, 747 N.W.2d at 218. In *Wright* the court noted that

> an underlying conviction was established prior to imposition of the restrictions. Here, Wright had been afforded a criminal trial in 1977 on the charge of statutory rape. Section 692A.2A applies to him only because of this conviction . . . .

*Id.* Because those affected by the residency restrictions were subject to judicial intervention in the underlying criminal charge, no bill of attainder could be found. *Id.*

Formaro acknowledges this prior precedent. He, nevertheless, seeks to distinguish his case because unlike *Wright,* he was subject to the 2000-foot rule due to a juvenile adjudication and not an adult criminal conviction. Because juvenile proceedings do not incorporate the full panoply of constitutional rights which adhere in a criminal prosecution, Formaro asserts that he has not been afforded a "judicial trial" as required by our prior precedent.

Even if we were to assume that Formaro was correct, his bill-of-attainder claim nevertheless must fail. As will be seen in the next section, on the record presented, Formaro has not met his burden of showing that the residency restrictions in section 692A.2A constitute punishment.

**E. Ex Post Facto.** Both the federal and state constitutions contain Ex Post Facto Clauses which " 'forbid the application of a new punitive measure to conduct already committed,' " and prohibit a statute which " 'makes more burdensome the punishment for a crime after its commission.' " *Schreiber v. State*, 666 N.W.2d 127, 129 (Iowa 2003) (quoting *State v. Corwin*, 616 N.W.2d 600, 601 (Iowa 2000)); *see also* U.S. Const. art. I, § 10; Iowa Const. art. I, § 21. "[T]he prohibition of ex post facto laws applies only to penal and criminal actions." *State v. Flam*, 587 N.W.2d 767, 768 (Iowa 1998). As a result, "[p]urely civil penalties . . . are not subjected to such restrictions," *Corwin,* 616 N.W.2d at 601, "even where the civil consequences are 'serious' in nature," *Hills v. Iowa Dep't of Transp.,* 534 N.W.2d 640, 641 (Iowa 1995).

"In deciding whether a statute violates the Ex Post Facto Clause by imposing prohibited punishment, the first task is to consider the intent of the legislature." *State v. Seering*, 701 N.W.2d 655, 667 (Iowa 2005). If the legislature intended the statute to impose criminal punishment, this intent controls, so the law is considered to be punitive in nature. *Id.* Alternatively, if the legislature intended the statute to be civil and nonpunitive, the legislative intent does not control. *Id.* In such situations, this court must look to the statute to determine whether it is " ' "so punitive either in purpose or effect as to negate" ' the nonpunitive intent." *Id.* (quoting *Smith v. Doe,* 538 U.S. 84, 92, 123 S. Ct. 1140, 1147, 155 L. Ed. 2d 164, 176 (2003)). " ' "[O]nly the clearest proof" ' will transform what the legislature has denominated a civil regulatory measure into a criminal penalty." *Miller*, 405 F.3d at 718 (quoting *Smith*, 538 U.S. at 92, 123 S. Ct. at 1147, 155 L. Ed. 2d at 176).

We addressed whether section 692A.2A violated the prohibition on ex post facto laws in *Seering*. In *Seering*, a divided court determined that the legislature's intent in enacting the 2000-foot rule was not punitive. *Seering*, 701 N.W.2d at 667. The court then went on to apply the factors articulated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 567, 9 L. Ed. 2d 644, 661 (1963), to determine if the law nevertheless had a punitive effect. *Id.* After considering

> whether the law has been historically and traditionally considered to be punishment, whether it promotes the traditional goals of punishment, whether it imposes an affirmative disability or restraint, whether it has a rational connection to some nonpunitive purpose, and whether it is excessive with respect to the nonpunitive purpose[,]

this court concluded that under the record presented, it could not find that the 2000-foot rule imposed criminal punishment. *Seering*, 701 N.W.2d at 667–68. Thus it did not violate the prohibition on ex post

facto laws. *Id.* The court reached this conclusion, in part, based on its determination that the statute did not amount to banishment. *Id.* at 667. The banishment holding in *Seering* has been affirmed in subsequent cases. *See, e.g., Willard*, 756 N.W.2d at 211; *Wright*, 747 N.W.2d at 218.

On appeal, Formaro asserts that the time has come for this court to reevaluate *Seering*. In particular, Formaro notes that since *Seering*, municipalities and counties have adopted ordinances, including two of the defendants in this case, further restricting the permissible residency zones for sex offenders. The combined effect of these efforts, Formaro asserts, now approaches banishment, making section 692A.2A effectively punitive.

Under the record presented to the district court, we cannot agree. While Formaro mentions the effect of the Polk County and City of Ankeny ordinances, he has not challenged the legality of either legislation. In this appeal we are presented solely with the constitutionality of the state sex offender residency restrictions.

Additionally, much like in *Seering*, Formaro asserts that the applicable standard for determining whether the 2000-foot rule is punitive depends largely on whether the law amounts to traditional banishment. *But see State v. Pollard*, 908 N.E.2d 1145, 1151 (Ind. 2009) (finding residency restrictions punitive, in part, due to their similarity to probation requirements, not banishment). Under the record presented here we cannot conclude that Formaro will be subject to banishment under section 692A.2A. Although Formaro's mother testified that she spent several hours looking for a suitable residence for her son, Formaro was quickly able to find permissible housing after speaking to his probation officer.

While Formaro estimated that almost ninety percent of the state falls within the exclusion zones, and certain maps were admitted which tend to substantiate that claim, the court was provided with no information as to what housing is available to registered sex offenders outside these zones. The record establishes that Formaro was able to secure housing relatively quickly after consulting with an individual knowledgeable about such ordinances. Under these circumstances, Formaro has failed to provide a factual basis to support his banishment claim. Without such a basis we cannot conclude that section 692A.2A violates the prohibition on ex post facto laws.

**IV. Conclusion.**

For the reasons expressed above, the decision of the district court denying Formaro's action for declaratory judgment is affirmed.

**AFFIRMED.**

All justices concur except Wiggins, J., who dissents.

**WIGGINS, Justice (dissenting).**

I continue to believe Iowa Code section 692A.2A violates the Ex Post Facto Clauses of the United States and Iowa Constitutions for the reasons set forth in my dissent in *State v. Seering*, 701 N.W.2d 655, 671–72 (Iowa 2005) (Wiggins, J., concurring in part and dissenting in part). Therefore, I would reverse the district court's ruling on these grounds.