# IN THE COURT OF APPEALS OF IOWA

No. 22-0091
Filed January 11, 2023

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**DARRYL ANTHONY HURTT,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Clarke County, Thomas P. Murphy, Judge.

 On interlocutory appeal, Darryl Hurtt challenges the district court's denial of his motion to dismiss the charge of possession of marijuana. **AFFIRMED.**

 Aaron D. Hamrock of McCarthy & Hamrock, P.C., West Des Moines, for appellant.

 Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

 Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Darryl Hurtt, a commercial truck driver from Missouri, appeals the denial of his motion to dismiss the charge of possession of a controlled substance (marijuana), claiming a violation of his right to freely travel through the State of Iowa. The Iowa Supreme court granted Hurtt's application for interlocutory appeal and transferred the case to this court. We are not persuaded Iowa's regulation of controlled substances directly impairs Hurtt's right to come into or leave the state. We affirm the denial of his motion to dismiss.

*Background Facts.* On September 8, 2021, Hurtt was driving a commercial truck and pulled into a weigh station for a weight violation. Officer Justin Brown was on duty and met Hurtt in the rear parking area of the scale. After obtaining consent from Hurtt, Officer Brown stepped onto the passenger-side step of the truck and detected an odor of marijuana coming from Hurtt's truck. Officer Brown asked Hurtt "where the weed was in the cab." Hurtt produced a small burnt blunt containing a green leafy substance. The officer asked where the rest was located, and Hurttproduced a glasses case containing three additional blunts containing a green leafy substance.

Officer Brown asked Hurtt what the green leafy substance was, and Hurtt replied that it was marijuana he had acquired from a dispensary in Missouri using his medicinal marijuana card. He had his Missouri medicinal marijuana card on his person and stated he only had the amount of marijuana prescribed to him.

Officer Brown placed Hurtt under arrest, and he was charged with first-

offense possession of a schedule I controlled substance—marijuana, in violation of Iowa Code section 124.401(5) (2021).[1]

Hurtt moved to dismiss the trial information, alleging his "medicinal prescription requires him to bring his medication with him due to the circumstances of his profession and not being home every night"; his "right to freely travel, if unable to carry his medicinal marijuana through other states, would be violated"; he "had in his possession only the amount of marijuana prescribed to him"; he "was traveling through and not intending to reside in Iowa"; and given his "rights to freely travel and take part in interstate commerce, the abovementioned charges should be dismissed." The court ordered the parties to file memoranda of authority, which they did. Hurtt asserted his right to travel freely between states had been infringed:

> The burden placed upon [Hurtt] is to either choose a different occupation and potentially be out of a job or to choose not to partake in medicine that was prescribed to him by a medical doctor. [Hurtt] should [not] have to decide which is more important to him, he wishes to have both of those privileges when he is simply driving through a state, which is his constitutional right.

There was no hearing on the motion to dismiss, and no testimony, affidavits, or exhibits were presented.[2] The court took the matter under advisement.

---

[1] Section 124.401(5)(a) provides:

> It is unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a serious misdemeanor for a first offense.

[2] In his reply brief Hurtt states, "Although there was not a formal hearing where evidence and testimony were presented, an off-the-record conversation was had among the parties concerning Mr. Hurtt's valid prescription and medical card . . . ."

The trial court appears to have accepted Hurtt's allegations as true. In its ruling, the court thoroughly discussed the statutes and case law concerning the right to travel and Iowa's regulations concerning marijuana. The court noted Iowa allows use of particular products of medical cannabidiol, but Hurtt "did not possess any of these four products." Rather, Hurtt "possessed 'blunts' that are used by smoking." The court noted Iowa law specifically prohibits smoking medical cannabidiol.

The court recognized federal case law concerning the "right to go from one place to another" and stated the the question was "whether the law criminalizing possession of marijuana as a Schedule I controlled substance infringes one's right to travel."

> Iowa does not recognize a prescription or otherwise valid certification obtained legally from another state for any other form or substance derived from marijuana. The Act also requires that "[m]edical cannabidiol provided exclusively pursuant to a written certification of a health care practitioner, if not legally available in this state or from any other bordering state, shall be obtained from an out-of-state source." Iowa Code § 124E.13.
>
> Based on the foregoing discussions and analysis, it is clear that pursuant to the current law in Iowa and the federal government's continued classification of marijuana as a controlled substance, Iowa's enforcement of its criminal statute for possession of marijuana does not infringe on the constitutional right to travel. As other courts have recently noted in their analyses of marijuana and the right to travel, "Congress may one day decide to legalize the possession of marijuana for medical (or other) purposes" but "it has yet to do so . . . ." *United States v. Kelly,* 419 F. Supp. 3d 610, 611 (W.D.N.Y. 2019). Until then, "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).
>
> The court recognizes that [Hurtt] possesses a valid prescription and card for medical marijuana from Missouri, and that he legally obtained the medical marijuana at a Missouri dispensary.[3]

---

[3] We note the district court did not have the benefit of *State v. Middlekauff*, an opinion issued recently by our supreme court. 974 N.W.2d 781 (2022). There, in

However, [Hurtt] traveled with this marijuana into a state that neither legalized medical marijuana in this form nor recognizes possession of medical marijuana obtained lawfully in another state.

The district court concluded "Iowa Code section 124.401(5) does not impair or violate [Hurtt's] fundamental right to interstate travel." Hurtt appeals.

*Scope of review.* We review motions to dismiss for correction of errors at law, but we review constitutional claims de novo. *Middlekauff*, 974 N.W.2d at 790–91.

*Discussion.* On appeal, Hurtt first argues his prescription for medical marijuana should be treated the same as any other prescription drug given to

---

a four-three decision, our supreme court rejected a defendant's claim that her Arizona medical marijuana registry identification card or written certification constituted a "valid prescription or order of a practitioner" under Iowa Code section 124.401(5), which could be raised as an affirmative defense to a possession charge. *Id.* at 792–801. In *Middlekauff*, the court concluded:

> Even if we held that the registry card or written certification is a prescription or order, we are faced with the fact that marijuana, as a schedule I drug, cannot be *validly* prescribed or ordered for medical treatment. While "valid" is also not defined in the Iowa Code, the Code of Federal Regulations defines a "valid prescription" as "issued for a legitimate medical purpose by an individual practitioner licensed by law to administer and prescribe the drugs concerned." 21 C.F.R. § 1300.03. The problem is neither Iowa, Arizona, nor federal law allow prescriptions for schedule I drugs because schedule I drugs, for purposes of the [Controlled Substances Act (CSA)], have no legitimate medical use by statutory classification. Iowa Code § 124.308(5)-(7); *see* Ariz. Rev. Stat. § 36-2525; *see also* 21 U.S.C. § 829. Nor does our administrative code provide for rules relating to the prescription of schedule I controlled substances. *See* Iowa Admin. Code r. 657-10.24. The same is true for medication orders. *See id.* r. 657-7.13(1).
>
> "Whereas some other drugs can be dispensed and prescribed for medical use the same is not true for marijuana. Indeed, for purposes of [CSA], marijuana has 'no currently accepted medical use' at all."

*Id.* at 798 (footnote omitted) (citations omitted). The court held "marijuana cannot be *validly* prescribed or ordered for medical treatment under Iowa Code section 124.401(5)." *Id.* at 800.

patients from their doctors. This is not the argument presented to the district court. In the district court, Hurtt asserted his right to interstate travel was violated because he had to "choose a different occupation and potentially be out of a job or to choose not to partake in medicine that was prescribed to him by a medical doctor." Hurtt has not preserved his claim on appeal that he has a "right to carry medication." *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013) ("We do not reach this argument, however, because it was not adequately raised and was not decided in the district court. Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

Hurtt argues his constitutional right to travel was infringed "because he is essentially unable to complete his regular job duties or he must forego traveling through any states where medicinal marijuana is not legal, even if he does not intend to stay or stop in those states." The United States Supreme Court has recognized a fundamental constitutional right to interstate travel, one component of which is the right of a citizen of one state to enter and leave another state. *See Formaro v. Polk Cnty.*, 773 N.W.2d 834, 838–39 (Iowa 2009). "[T]he freedom to travel is sometimes seen as an essential means of effectuating other rights, such as freedom of association and freedom of speech." *Id.* at 839. But there is no fundamental right to possess marijuana. *Middlekauff*, 974 N.W.2d at 803.

Hurtt acknowledges "not everything that deters travel burdens the fundamental right to travel." *Matsuo v United States*, 586 F.3d 1180, 1183 (9th Cir. 2009). And he recognizes that in order for the right of travel to be directly

impaired there needs to be a showing it burdens entry into or exit from the state. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 995 (8th Cir. 2016).

Hurtt baldly asserts his "right to freely travel for employment purposes and ability to carry lawfully obtained medical marijuana has been infringed in this case." Iowa has the authority to regulate controlled substances. *See* Iowa Code ch. 124.[4] We are not persuaded Iowa's regulation of controlled substances directly impairs Hurtt's right to come into or leave the state. We affirm the denial of his motion to dismiss.

**AFFIRMED.**

---

[4] In *Gonzales v. Oregon*, the Supreme Court observed:

> [T]he CSA "repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and interstate traffic in illicit drugs." In doing so, Congress sought to "conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." It comes as little surprise, then, that we have not considered the extent to which the CSA regulates medical practice beyond prohibiting a doctor from acting as a drug "'pusher'" instead of a physician. . . . And in *United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483 (2001), Congress' express determination that marijuana had no accepted medical use foreclosed any argument about statutory coverage of drugs available by a doctor's prescription.
>
> . . . The statute and our case law amply support the conclusion that Congress regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood. Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally. The silence is understandable given the structure and limitations of federalism, which allow the States "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons."

546 U.S. 243, 269–70 (2006) (citations omitted); *see also id.* at 271 ("Even though regulation of health and safety is 'primarily, and historically, a matter of local concern,' there is no question that the Federal Government can set uniform national standards in these areas." (internal citation omitted)).